# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SECURITY NATIONAL<br>MORTGAGE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N16C-01-221 PRW CCLD |
| | ) | |
| LEHMAN BROTHERS<br>HOLDINGS INC. | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: July 20, 2016
Decided: August 24, 2016
Corrected: September 9, 2016

## MEMORANDUM OPINION AND ORDER
*Upon Defendant, Lehman Brothers Holdings, Inc.'s,*
*Motion to Dismiss or, in the Alternative, to Stay this Action,*
**GRANTED.**

Donald E. Reid, Esquire, Karl G. Randall, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, Gifford W. Price, Esquire (*pro hac vice*), (Argued), Mackey Price & Mecham, PC, Salt Lake City, UT, Blake D. Miller, Esquire (*pro hac vice*) (Argued), Miller Toone PC, Salt Lake City, UT, Attorneys for Security National Mortgage Company.

Vincent J. Poppiti, Esquire, Kasey H. DeSantis, Esquire, Fox Rothschild LLP, Wilmington, DE, Michael A. Rollin, Esquire, Of Counsel (*pro hac vice*) (Argued), Maritza Braswell, Esquire, Of Counsel (*pro hac vice*), Lindsay A. Unruh, Esquire, Of Counsel (*pro hac vice*), Caleb Durling, Esquire Of Counsel (*pro hac vice*), Rollin Braswell Fisher LLC, Greenwood Village, CO, Attorneys for Defendant Lehman Brothers Holdings, Inc.

**WALLACE, J.**

## I. INTRODUCTION

Security National Mortgage Company ("SecurityNational") brings this action pursuant to Delaware's Declaratory Judgment Act.[1] SecurityNational seeks a declaration that Defendant Lehman Brothers Holdings Inc.'s ("LBHI") indemnification claims related to loans sold by SecurityNational are time-barred, or in the alternative, that the indemnification claims are otherwise invalid.[2]

Before the Court is LBHI's Motion to Dismiss, or in the Alternative, to Stay the Action. LBHI asserts that this Court does not have subject matter jurisdiction over SecurityNational's claims because SecurityNational's complaint violates an automatic stay imposed by the Federal Bankruptcy Code.[3] Even if subject matter jurisdiction exists, LBHI urges the Court to decline to exercise jurisdiction over SecurityNational's action because there is no present "actual controversy" susceptible to declaratory relief. LBHI also argues that the Court should dismiss the action on first-filed or *forum non conveniens* grounds. If unwilling to dismiss, LBHI requests that the Court grant a stay pending resolution of related litigation in

---

[1]     *See* Plf.'s Compl. for Declaratory J. ¶¶ 37 -39 ("Plf.'s Compl."). DEL. CODE ANN. tit. 10, § 6501 (2015) (Delaware's Declaratory Judgment Act).

[2]     *See* Plf.'s Compl.

[3]     *See* 11 U.S.C. §§ 362(a)(1), (3) (2015).

the United States Bankruptcy Court for the Southern District of New York ("the Bankruptcy Court") that also involves SecurityNational.[4]

In short, LBHI argues that the Bankruptcy Court is the most appropriate and suitable forum for the cause SecurityNational presents here. The Court agrees. Because SecurityNational's declaratory judgment request fails to satisfy the requirements of Delaware's Declaratory Judgment Act, LBHI's motion to dismiss is **GRANTED**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

SecurityNational is a Utah-based corporation that acts as an originator of residential mortgage loans.[5] LBHI is a Delaware corporation that owned and operated Lehman Brothers Bancorp; that entity, in turn, owned Lehman Brothers Bank LLC ("LB Bank").[6]

For several years, SecurityNational sold residential mortgage loans to LB Bank under the terms of an April 15, 2005 Loan Purchase Agreement ("LPA").[7] The LPA incorporated the "Seller's Guide" of LB Bank's loan administrator and

---

[4]     *See* Adv. Proc., *Lehman Brothers Holdings Inc. v. 1st Advantage Mortgage, LLC et al.,* No. 16-01019 (SCC) (Feb. 3, 2016) (multi-party proceeding in the Bankruptcy Court against a number of loan originators including SecurityNational).

[5]     Plf.'s Ans. Br. in Opp'n to to LBHI's Mot. to Dismiss ("Plf.'s Opp'n") 1.

[6]     *Id.*

[7]     Plf.'s Compl. ¶ 6.

agent, Aurora Loan Services ("Aurora").[8] These agreements outlined the parties' responsibilities for the sale and purchase of the mortgage loans, including SecurityNational's indemnification obligations.[9] In September 2008, LB Bank and LBHI entered into an Assignment Agreement whereby LB Bank assigned its rights under SecurityNational's LPA and Seller's Guide to LBHI.[10]

LB Bank subsequently sold many of these residential mortgage loans to LBHI. LBHI then sold these loans to the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac").[11]

Previously, in December 2007, LB Bank, Aurora, and SecurityNational had entered into an Indemnification Agreement.[12] The Indemnification Agreement arose out of a concern that SecurityNational had breached the LPA and Seller's Guide with respect to certain loans.[13] Under the Indemnification Agreement, SecurityNational agreed to indemnify LB Bank and Aurora on those loans and

---

[8]    *Id.*

[9]    *Id.*; Def.'s Mot. to Dismiss 4 (setting forth SecurityNational's indemnification obligations, among other duties).

[10]    Plf.'s Compl. ¶¶ 24-26.

[11]    *Id.* ¶ 7; Plf.'s Opp'n 2.

[12]    Plf.'s Compl. ¶¶ 17-19.

[13]    *Id.* ¶ 17.

deposited several million dollars into a reserve account to be used to cover incurred losses.[14]

In the wake of the subprime mortgage crisis, on September 15, 2008, LBHI entered into the largest Chapter 11 bankruptcy in history.[15] Since then – and perhaps for many more years – the Bankruptcy Court has overseen that proceeding.[16] In late 2011, the Bankruptcy Court confirmed LBHI's bankruptcy reorganization plan, with the Plan's effective date being March 6, 2012.[17] The Plan grants a "Plan Trust" sole authority to liquidate LBHI's assets, including the ability to litigate claims to maximize distributions to creditors.[18]

Coinciding with the Bankruptcy proceedings, SecurityNational expressed concerns that it had overpaid into the indemnification reserve account in a letter dated November 2010.[19] Months later, on March 28, 2011, Aurora/LB Bank assigned to LBHI their rights under the Indemnification Agreement.[20] Less than

---

[14]    *Id.* ¶ 18.

[15]    Def.'s Mot. 4.

[16]    *Id.*

[17]    *Id.*

[18]    *Id.* at 5.

[19]    Plf.'s Compl. ¶ 19.

[20]    *See id.* ¶¶ 19-20.

one month later, LBHI sent its first monthly bill to SecurityNational.[21] On June 2, 2011, because of concerns related to overpayment, SecurityNational refused to pay.[22] LBHI unilaterally declared that the Indemnification Agreement was "null and void."

In January and February 2014, the Bankruptcy Court approved LBHI's multi-billion dollar settlements with Fannie Mae and Freddie Mac.[23] These settlements resolved issues related to LBHI's sale of the defective mortgages.[24] Following the settlement, LBHI began to pursue its indemnification claims (the "Indemnification Claims") against various loan sellers, including SecurityNational.[25]

To simplify LBHI's indemnification claims against approximately three-thousand counter-parties, the Bankruptcy Court granted LBHI's request to implement an Alternative Dispute Resolution ("ADR") Procedure specifically for

---

[21]     *Id.* ¶ 21.

[22]     *Id.* ¶ 22.

[23]     Def.'s Mot. 6.

[24]     *Id.*

[25]     Plf.'s Compl. ¶ 29.

their indemnification claims.[26] The Bankruptcy Court outlined the procedure for providing notice of the claims and directed the parties to commence ADR.[27]

LBHI served SecurityNational with notice of the ADR on August 28, 2015.[28] SecurityNational initially objected, but ultimately agreed to participate under a full reservation of rights.[29] The parties began negotiations, but did not resolve their issues.[30]

Many other loan providers likewise objected to LBHI's indemnification claims. Several, not including SecurityNational, pursued statute-of-limitation claims in the Bankruptcy Court. The Bankruptcy Court rejected those arguments, finding that "LBHI's claim for indemnification . . . did not accrue until its liability to a third-party [FannieMae] was fixed or payment was made."[31]

SecurityNational did not join in these motions, but the arguments were substantially similar to those it now asserts.

---

[26] *Id.* ¶¶ 30-32. *See also* ADR Order, attached as Ex. F. to Def.'s Mot.

[27] Plf.'s Compl. ¶¶ 30-32; Def.'s Mot. 7.

[28] Def.'s Mot. 7; Plf.'s Opp'n 6 (stating that SecurityNational received the Indemnification ADR Notice on August 27, 2015); Plf.'s Compl. ¶ 33.

[29] Plf.'s Compl. ¶¶ 30-32.

[30] *Id.*

[31] *In re Lehman Bros. Holdings Inc.*, 530 B.R. 601, 613 (Bankr. S.D.N.Y. 2015). *See also Hometrust Mortgage Co. v. Lehman Bros. Holdings*, 2015 WL 5674899, at *3 (S.D.N.Y. Sept. 25, 2015) (denying motions for leave to appeal from the Bankruptcy Court's decision).

After ADR negotiations failed, SecurityNational initiated this action on January 26, 2016. It seeks a declaratory judgment that LBHI's indemnification claims are time-barred and that LBHI's claims against them are invalid.[32] SecurityNational served LBHI notice of this suit on February 4, 2016.[33]

LBHI filed a similar "omnibus" lawsuit against all loan providers, including SecurityNational, in the Bankruptcy Court on February 3, 2016. It seeks a declaratory judgment that the loan providers owe LBHI indemnity for losses sustained on the loans.[34] On February 17, 2016, LBHI filed in the Bankruptcy Court a Motion to Enforce the Automatic Stay, the Plan, and the Confirmation Order against SecurityNational.[35] It asks that the Bankruptcy Court order SecurityNational to dismiss this Delaware action as a violation of the Bankruptcy Code's automatic stay.[36] The Bankruptcy Court heard arguments on May 5, 2016, but has yet to issue a decision.[37]

---

[32]   Plf.'s Compl. ¶¶ 37, 39(A), 39(B).

[33]   Def.'s Mot. 10.

[34]   *Id.* at 10-11. *See also* Adv. Proc., *Lehman Brothers Holdings Inc. v. 1st Advantage Mortgage, LLC et al.*, No. 16-01019 (SCC) ¶¶ 49-59 (Bankr. S.D.N.Y. Feb. 3, 2016).

[35]   Def.'s Mot. 10-11.

[36]   *Id.*

[37]   *Id. See also* Mot. of LBHI to Enforce the Automatic Stay, the plan, and the Confirmation Order Against iFreedom Direct Corporation and SecurityNational Mortgage Company, *In re Lehman Brothers Hldgs. Inc., et al.*, No. 08-13555 (SCC) (Bankr. S.D.N.Y. Feb. 17, 2016).

## III. THE PARTIES' CONTENTIONS

LBHI filed the instant Motion to Dismiss or, in the Alternative, to Stay this Action on March 2, 2016.[38] It sets forth four separate reasons why SecurityNational's action in this Court is inappropriate and should be dismissed:

First, LBHI argues that the Bankruptcy Code's automatic stay statute, 11 U.S.C. §§ 362(a)(1) and (a)(3), precludes subject matter jurisdiction in any Delaware court.[39]

Second, it says SecurityNational's declaratory judgment action abuses Delaware's Declaratory Judgment Act.[40]

Third, LBHI asserts that as its ADR proceeding was filed prior to the current action, it should be afforded deference under Delaware's "first-filed" doctrine.[41]

And, fourth, LBHI urges the Court to dismiss the action on the ground of *forum non conveniens*.[42]

SecurityNational filed an answering brief opposing LBHI's motion and the Court held oral argument thereon last month.

---

[38]   D.I. 18 (Def.'s Mot. to Dismiss).

[39]   *Id.* at 12-18.

[40]   *Id.* at 18-26.

[41]   *Id.* at 26-31.

[42]   *Id.* at 31-33.

## A. The Automatic Stay Under §§ 362(a)(1) and (a)(3) of the Bankruptcy Code

LBHI contends that SecurityNational's declaratory judgment action here violates §§ 362(a)(1) and (3) of the Bankruptcy Code. It argues that, under the prevailing view among federal courts, actions taken in violation of such an automatic stay are void *ab initio*.[43]

### 1. Bankruptcy Code Section 362(a)(1)

Section 362(a)(1) of the Bankruptcy Code prohibits "the commencement or continuation . . . of a judicial . . . or other action or proceeding against the debtor that was or could have been commenced before the commencement of a case under this title, or to recover a claim against the debtor that arose before commencement."

LBHI asserts that SecurityNational's action seeks a declaration as to the enforceability of LBHI's claims arising from pre-bankruptcy ("prepetition") contracts between the parties,[44] and thus, are barred under § 362(a)(1).

SecurityNational argues that the relevant inquiry is not the contracts' effective dates, but rather the date SecurityNational could have filed its request for

---

[43] *Id.* at 17-18 (citing *e.g. Raymark Indus., Inc. v. Lai*, 973 F.2d 1125, 1132 (3d Cir. 1992) ("actions taken in violation of the automatic stay are void *ab initio*")).

[44] *Id.* at 14.

declaratory judgment.[45] SecurityNational says it was unaware of any dispute with LBHI until August 27, 2015, the day it received notice of LBHI's ADR proceeding. Thus, it argues, a declaratory judgment proceeding could not commence until after the commencement of that bankruptcy proceeding and is not barred.

## 2. Bankruptcy Code Section 362(a)(3)

Section 362(a)(3) of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 541(a)(1) of that Code defines property of the estate very broadly, with certain exceptions inapplicable here, as "all legal or equitable interests of the debtor in property as of the commencement of the case."[46]

SecurityNational argues that the Indemnification Claims are not estate property. LBHI could only pursue the Indemnification Claims when the estate terminated – i.e., when the Bankruptcy plan was confirmed.[47] As a result, the Indemnification Claims accrued only once LBHI settled with FannieMae and

---

[45]    Plf.'s Opp'n 7-8.

[46]    *See also Giuliano v. FDIC*, 499 B.R. 439, 543 (Bankr. D. Del. 2013) (stating that "estate property" includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative").

[47]    Plf.'s Opp'n 10.

-11-

FreddieMac in 2014.[48]  As such, these claims arose only after the completion of the bankruptcy proceeding and were not part of the estate.  So § 362(a)(3) does not apply.

In response, LBHI argues that SecurityNational's declaratory judgment is a clear attempt to assert control over the estate's property.  The Bankruptcy Plan expressly provides that the automatic stay will remain in place to protect any property, whether it is "unliquidated," "contingent" or "unmatured."[49]  The indemnification claims were always protected under § 362(a)(3) as contingent interests that LBHI at all times during the bankruptcy proceeding intended to pursue to fund creditor recoveries.[50]  Because SecurityNational's declaratory judgment action is an attempt to gain possession of estate property and would undermine LBHI's ability to litigate the Indemnification Claims, it is barred by § 362(a)(3).[51]

## B.    Delaware's Declaratory Judgment Act

LBHI argues that the Court should decline to exercise its broad discretion under Delaware's Declaratory Judgment Act.  It says SecurityNational's action

---

[48]    *Id.* at 12.

[49]    Def.'s Reply 12.

[50]    *Id.*

[51]    Def.'s Mot. 15.

does not present an "actual controversy" appropriate for resolution via declaratory judgment because it is "overripe."[52] LBHI cites a number of factors supporting its argument that the action is inappropriate, including: that the Bankruptcy Court is the most efficient forum to address the dispute, given its particular expertise and familiarity with the Lehman Brothers bankruptcy proceedings; that SecurityNational will be able to obtain all requested relief in those proceedings; and that judicial resources will be preserved by litigating in one forum.[53] Thus, posits LBHI, given the duplicative proceedings, declaratory judgment in this action is unwarranted.

SecurityNational largely opposes this argument on the basis that LBHI has filed its own motion for declaratory judgment in the Bankruptcy Court requesting a similar ruling on the Indemnification Claims.[54] SecurityNational also argues that its cause relates solely to state law contract issues which the Bankruptcy Court is no more qualified to handle than any other court.[55] Also, according to SecurityNational, the Bankruptcy Court is not a particularly efficient forum

---

[52]     *Id.* at 20 (quoting *Burris v. Cross*, 538 A.2d 1364, 1372, 1376 n. 6 (Del. Super. Ct. 1990), which explains that declaratory judgment is not proper where the facts and circumstances of the case demonstrate that the case has "proceeded past the point where declaratory action will serve a practical and useful purpose").

[53]     *Id.* at 22-26 (using *Burris* factors as guidelines).

[54]     Plf.'s Opp'n 20-25.

[55]     *Id.*

because it cannot render final dispositive orders – the federal District Court must confirm all its decisions related to "non-core" issues, including those at play here.

## C. *McWane's* First-Filed Doctrine

The *McWane* first-filed doctrine grants the Court discretion to stay or dismiss a pending action when there "is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues."[56] Generally, a Delaware court will "uphold a plaintiff's choice of forum" where her action is filed before the other action, "except in the rare case where that choice imposes overwhelming hardship on the defendant."[57]

LBHI suggests that its August 2015 ADR proceedings in Bankruptcy Court should be given preference over this proceeding, filed January 26, 2016.[58] Because "strong deference" is given to the choice of forum in the first-filed action, SecurityNational's second-filed action should be dismissed "to avoid wasteful, duplicative litigation and the attendant risk of inconsistent judgments."[59] LBHI reiterates many of the above-identified reasons why the Bankruptcy Court should

---

[56] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970).

[57] *Rapoport v. Litig. Trust of MDIP Inc.*, 2005 WL 3277911, at *2 (Del. Ch. Nov. 23, 2005).

[58] Def.'s Mot. 27-29.

[59] *Id.* at 27 (quoting *Lisa, S.A. v. Mayorga*, 993 A.2d 1042, 1047 (Del. 2010) and citing *Dura Pharms., Inc. v. Scandipharm, Inc.*, 713 A.2d 925, 928 (Del. Ch. 1998)).

maintain sole oversight over the issues in this case. Namely, the Bankruptcy Court is familiar with both parties and with the statute-of-limitation and assignment arguments similar to SecurityNational's – they have already been raised by other party mortgage loan originators.

SecurityNational contends that their action was first-filed because an ADR proceeding is not tantamount to the filing of a lawsuit. And so, its filing, not LBHI's, should be given deference.

## D.     The *Forum non Conveniens* Doctrine

When determining whether to dismiss or stay an action on *forum non conveniens* grounds, the Court will examine the six factors announced in *General Foods v. Cryo-Maid*: (1) whether Delaware law governs the case; (2) the relative ease of access to proof; (3) the availability of compulsory process for witnesses; (4) the pendency or nonpendency of a similar action or actions in another jurisdiction; (5) the possibility of a view of the premises; and (6) all other practical considerations that would make the trial easy, expeditious, and inexpensive.[60]

LBHI contends that factors one, two, four, and six weigh heavily against Delaware: New York law applies to this action; no documents or witnesses are located in Delaware; the ongoing bankruptcy action in New York's Bankruptcy

---

[60]     *Gen. Foods Corp. v. Cryo-Maid, Inc.,* 198 A.2d 681, 684 (Del. 1964); *Parvin v. Kaufmann,* 236 A.2d 425, 427 (Del. 1967); *Certain Underwriters at Lloyds Severally Subscribing Policy No. DP359504 v. Tyson Foods, Inc.,* 2008 WL 660485, at *3 (Del. Super. Ct. Mar. 7, 2008).

Court replicates this declaratory judgment action; and LBHI's bankrupt entity status makes duplicate litigation costly and inefficient.[61] LBHI suggests that factors three – availability of compulsory process for witnesses – and five – viewing the premises – are inapplicable and do not favor either jurisdiction.[62]

According to SecurityNational, LBHI has failed to show that litigation in this forum presents an "overwhelming hardship" as required under Delaware law.[63] And even if some lower standard were applied, it says, the *Cryo-Maid* factors do not support New York over Delaware. SecurityNational argues that none of the alleged loans at issue involved New York property; that New York and Delaware are equally onerous for compulsory process for witnesses and premise viewing; that Delaware's statute-of-limitations law applies due to New York's borrowing statute; and that it is impractical to force all 149 alleged defendants to litigate in the Southern District of New York, one of the country's busiest.[64] SecurityNational

---

[61]  Def.'s Mot. 33-34.

[62]  *Id.*

[63]  Plf.'s Opp. 28-30 (citing *BP Oil Supply Co. v. ConocoPhillips Co.*, 2010 WL 702382 (Del. Super. Ct. Feb. 25, 2010)).

> To justify dismissal, the movant must demonstrate that litigating in Delaware would cause overwhelming hardship. To justify a stay, the movant need only demonstrate that the preponderance of applicable forum factors "tips in favor" of litigating the dispute in the non-Delaware forum.

*BP Oil Supply*, 2010 WL 702382, at *2.

[64]  *Id.*

also makes much of the Bankruptcy Court's alleged "inefficiency" because it cannot issue a final judgment on non-core issues, such as those present here. Instead, the Bankruptcy Court can only make findings of fact and conclusions of law; these are then reviewable by the federal district court.[65] So, Security National concludes, the Court should not dismiss its action here on *forum non conveniens* grounds.

## IV. DISCUSSION

The Court has thoroughly considered each of the parties' arguments on these issues.[66] After careful review though, the Court finds that the analysis suitable to the purpose here is that engaged under Delaware's Declaratory Judgment Act. Accordingly, for the reasons hereafter, the Court exercises its judicial discretion to decline jurisdiction over this action.

---

[65]  *See* 28 U.S.C. § 157(c)(1) ((c)(1) ("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."); *see also In re Lehman Bros. Holdings Inc.*, 18 F. Supp. 3d 553, 556–58 (S.D.N.Y. 2014).

[66]  *See* IV-C, *infra.*

## A. Standard of Review for Delaware's Declaratory Judgment Act

Delaware's Declaratory Judgment Act states:

> Except where the Constitution of this State provides otherwise, courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force and effect of a final judgment or decree.[67]

"The basic purpose of the Declaratory Judgment Act is to enable the courts to adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance to [a] stage at which a matter is traditionally justiciable."[68] It is a tool to "promote preventive justice,"[69] not "a means of eliciting advisory opinions from the courts."[70]

It is well-settled that the Court has discretion to grant or deny declaratory judgment.[71] But, the Court cannot exercise that discretion unless the underlying

---

[67] DEL. CODE ANN. tit. 10, § 6501.

[68] *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586, 591-92 (Del. 1970).

[69] *Stabler v. Ramsay*, 88 A.2d 546, 551, (Del. 1952) *adhered to on reh'g*, 89 A.2d 544 (Del. 1952).

[70] *Ackerman v. Stemerman*, 201 A.2d 173, 175 (Del. 1964) (citing *Stabler*).

[71] DEL. CODE ANN. tit. 10, § 6506; *XI Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1216 (Del. 2014); *Delaware Bldg. & Constr. Trades Council, AFL-CIO v. Univ. of Delaware*, 2015 WL 884058, at *2 (Del. Super. Ct. Feb. 20, 2015).

matter presents an "actual controversy."[72]   To determine whether an actual controversy exists, the following elements must be satisfied:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; and (4) the issue involved in the controversy must be ripe for judicial determination.[73]

In this case, the first three factors are met and do not appear to be contested by either party.  It is the last – ripeness – that poses issue.

The ripeness prerequisite seeks to avoid adjudication of issues that "have not yet matured to a point at which judicial action is appropriate."[74]  The requirement "reflects two goals: first, to conserve judicial resources by not allocating them to resolution of disputes that are not ready for judicial disposition, and, second, to avoid the development of the law in the absence of concrete facts and adversary positions upon which case law is premised."[75]

---

[72]     *See Gannett Co., Inc. v. Bd. of Managers of the Delaware Criminal Justice Info. Sys.*, 840 A.2d 1232, 1237 (Del. 2003); *XI Specialty*, 93 A.3d at 1216-17.

[73]     *Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, 303 A.2d 660, 662-63 (Del. 1973) (adopting the "actual controversy" requisites articulated by this Court in *Marshall v. Hill*, 93 A.2d 524 (Del. Super. Ct. 1952)).

[74]     *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987).

[75]     *Tenneco Auto. Inc. v. El Paso Corp.*, 2001 WL 1641744, at *6 (Del. Ch. Nov. 29, 2001).

"In the typical declaratory judgment action, an unwilling litigant will have cast a cloud upon a property right of the declaratory plaintiff, but will not have moved forward to litigate the claim."[76]

But this is not a typical case. The action is clearly ripe for adjudication. Litigation is ongoing, has been for many years, and seems destined to continue. In fact, LBHI urges the Court to dismiss the action as "overripe." It cites *Burris v. Cross*.[77]

In *Burris*, the conflict centered around the scope of an easement.[78] The parties had for many months prior been attempting to resolve the matter through good faith settlement negotiations.[79] The defendant provided the plaintiffs with a draft Chancery Court complaint he intended to file should the negotiations fail.[80]

---

[76]      *Schick*, 533 A.2d at 1239.

     Delaware courts generally look at five specific things to determine whether a matter is "ripe" for purposes of declaratory judgment: (1) a practical evaluation of the legitimate interests of the plaintiff in a prompt resolution of the question presented; (2) the hardship that further delay may threaten; (3) the prospect of future factual development that might affect the determination made; (4) the need to conserve scarce resources; and (5) a due respect for identifiable policies of law touching upon the subject matter in dispute. *See id.* at 1239-40; *Delaware Bldg. & Constr. Trades Council, AFL-CIO v. Univ. of Delaware*, 2015 WL 884058, at *2 (Del. Super. Ct. Feb. 20, 2015); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1133, 1137 (Del. Super. Ct. June 17, 1992); *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 565 A.2d 268, 274 (Del. Super. Ct. May 22, 1989).

[77]      *Burris v. Cross*, 583 A.2d 1364 (Del. Super. Ct. Sept. 27, 1990).

[78]      *Id.* at 1370.

[79]      *Id.* at 1369.

[80]      *Id.*

As negotiations deteriorated, it became clear litigation would likely result.[81] Knowing that the defendant intended to file suit in the Chancery Court, the plaintiffs filed for declaratory judgment in this Court. Four days later, defendant filed a similar suit in Chancery.[82]

This Court found that, while the suit was ripe for adjudication, it should dismiss the matter as "overripe."[83] In making this determination, the Court considered the following factors:

(1) Whether the defendant is truly an unwilling litigant, thus necessitating declaratory action;

(2) What form of relief is truly being sought by the plaintiff and whether that relief, if not solely a declaration of rights, would require resort to another court for supplemental relief. If so, whether both the rights and relief could be attained in a single non-declaratory action already available;

(3) Whether another remedy exists and whether it would be more effective or efficient and, thus, whether declaratory judgment would serve a useful purpose;

(4) Whether another action is pending, instituted either before or after the instant action, at the time of consideration of the Motion to Dismiss, and whether plaintiff would be able to raise all claims and defenses available in the instant action, as part of the pending action;

---

[81] *Id.*

[82] *Id.*

[83] *Id.* at 1372, n. 6 (The Court noted that "overripeness is merely another aspect of the total concept of ripeness. Just as the Court has the discretion to dismiss an action if not ripe for determination, so may a Court dismiss an action if a practical evaluation of the peculiar facts and circumstances of the case lead the Court to believe that events have proceeded past the point where declaratory action will serve a practical and useful purpose.").

(5) Whether the instant action has truly been instituted to seek a declaration of rights or merely for tactical or other procedural advantage;

(6) Whether the instant action was filed in apparent anticipation of other pending proceedings; and

(7) Whether plaintiff will suffer any prejudice if the instant action is dismissed.[84]

The Court finds the *Burris* factors are suited to resolution of LBHI's motion. As in *Burris*, the parties have moved far forward to litigate the claim. As in *Burris*, the Court will use the seven above-enumerated factors to determine whether SecurityNational's declaratory judgment action is indeed "overripe."

## B. Application of *Burris* Factors

Taking each in turn, the Court concludes that the *Burris* factors, as well as considerations of judicial economy, outweigh any argument for the propriety of this Court's further involvement.

### Factor One: LBHI is a willing litigant.

LBHI is a willing litigant. It has already proceeded with litigation under the method approved by the Bankruptcy Court. Prior to the filing of this action, LBHI initiated its own ADR proceedings against SecurityNational in Bankruptcy Court. LBHI continues to be a willing and very active litigant in that court. And there is no indication that LBHI will abandon its efforts there.

---

[84] *Id.* at 1372-73.

**Factors Two, Three, and Four: The Bankruptcy Court can hear all of SecurityNational's claims and defenses and provide all rights and relief sought in a single action; declaratory judgment here does not serve a useful purpose.**

The Court concludes that the Bankruptcy Court is the appropriate forum for resolution of these issues. The Bankruptcy Court can provide full due process rights to all parties. SecurityNational can raise any defense there it wishes. And, most importantly, Bankruptcy Court can provide the same relief sought here.

At oral argument, SecurityNational conceded that the Bankruptcy Court could address its claims, although it alleged that such resolution would not be in the expedited manner SecurityNational would prefer. It argues too that the Bankruptcy Court cannot offer a final disposition until its decision is reviewed and upheld by the United States District Court. But that does not change the fact that the Bankruptcy Court can hear and decide these issues. Several times already, a party's request to withdraw their "non-core" issues from Bankruptcy Court to the district court based on this "inefficient-two-litigation" argument has been denied.[85] The Court finds these holdings persuasive and they inform its decision here.

---

[85] *See, e.g., In re Lehman Bros. Holdings Inc.*, 18 F. Supp. 3d 553, 557-58 (S.D.N.Y. 2014) (holding that defendant's concerns about double litigation are "exaggerated" because even if the Bankruptcy Court's decision was challenged, the Bankruptcy Court's findings would "be helpful to the Court and the review by the District Court could hardly be characterized as a separate and additional litigation."); *In re Formica Corp.*, 305 B.R. 147, 150 (S.D.N.Y. 2004) ("The plaintiff's contention that [the District Court] would have to review any bankruptcy court determination *de novo* carries little weight in light of the litigation already occurring before the bankruptcy court."); *Lehman Bros. Holdings Inc. v. Wellmont Health Sys.*, 2014 WL 3583089, at *4 (S.D.N.Y. July 18, 2014) ("although the bankruptcy court is limited to issuing a report and

Moreover, the Bankruptcy Court is particularly well-suited for this case. For over eight years the Bankruptcy Court has overseen LBHI's dissolution. As the District Court of Southern New York has previously observed:

> [J]udicial efficiency will be served by keeping the present action in the bankruptcy court given its substantial experience with the Lehman bankruptcy proceedings, the breadth and complexity of which are unparalleled . . .[86]

This Court recognizes the obvious complexity of the Lehman bankruptcy and the diligent and extraordinary efforts already undertaken (and completed) by the Bankruptcy Court. This Court should and will not waste judicial resources

---

recommendation, which must be reviewed *de novo* by the district court, neither court's efforts will be duplicative. Multiple courts have observed that "experience strongly suggests that having the benefit of the report and recommendation will save the district court and the parties an immense amount of time.") (quoting *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 490 B.R. 46, 56 (S.D.N.Y. 2013)).

[86] *Lehman Bros. Holdings Inc. v. Wellmont Health Sys.*, 2014 WL 3583089, at *4 (S.D.N.Y. July 18, 2014). *See also* Court Minutes and Order, *Guaranty Bank, FSB v. Lehman Brothers Holding Inc.*, No. 2:15-cv-00549-PP (E.D. Wis. May 20, 2016) (expressing the opinion that "because of her long-standing relationship with the claims in the Lehman bankruptcy, [Bankruptcy Court's] Judge Chapman was uniquely suited to decide this claim."); *In re Lehman Bros. Holdings, Inc.*, 2014 WL 4635576, at *1 (S.D.N.Y. Sept. 5, 2014) ("Keeping this matter in the bankruptcy court promotes judicial economy. The bankruptcy court has handled the Lehman bankruptcy for over five years and is well equipped to address these disputes."); *In re Lehman Bros. Holdings Inc.*, 502 B.R. 376, 383 (Bankr. S.D.N.Y. 2013) ("Regardless of whether a particular count is core or non-core, it is most efficient and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in this Court."); *Lehman Bros. Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.)*, 18 F.Supp.3d 553, 558 (S.D.N.Y. 2014) ("The Bankruptcy Court's resolution of any motion for summary judgment, or any decision by the Bankruptcy Court based on the documentary record, will be very useful to the District Court given the Bankruptcy Court's experience with the Lehman bankruptcies and related adversary proceedings involving swap agreements and derivative-based claims.").

duplicating that work already done.[87] Judicial efficiency weighs heavily in favor of dismissal.

Accordingly, factors two, three, and four weigh against SecurityNational.

**Factors Five and Six: This action was filed in anticipation of the Bankruptcy Court's ADR proceedings and appears to have been filed for tactical advantage.**

Declaratory judgment is not a means to achieve tactical advantage.[88] At oral argument, SecurityNational claimed that "forum shopping" exists only where a party is trying to gain an advantage in a favorable forum. It argues that it could not have engaged in forum shopping because Delaware courts do not demonstrably present a particular advantage here.

But it is clear that Delaware presents a tactical advantage over the Bankruptcy Court – a forum which has demonstrably disfavored arguments such as SecurityNational's in the related bankruptcy litigation. Given the history between the parties and what occurred before the filing of this suit, the Court can only

---

[87] *See Burris v. Cross*, 583 A.2d 1364, 1373 (Del. Super. Ct. Sept. 27, 1990) (declining declaratory judgment where the defendant had *already moved* to litigate in a forum "which can provide a more efficient and complete remedy"); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1133, 1137 (Del. Super. Ct. June 17, 1992) (explaining that declaratory judgment will only be granted where an actual controversy exists so that judicial resources are not wasted on "situations in which a judicial declaration will not end the dispute between the parties"). *Cf. Am. Guar. & Liab. Ins. Co. v. Intel Corp.*, 2009 WL 2589597, at *13, n. 85 (Del. Super. Ct. July 24, 2009) (rejecting argument that California court had more experience on the contested policy because the related California case settled before that court ruled on the policy and that case involved different issues).

[88] *Burris*, 583 A.2d at 1375.

conclude that SecurityNational engaged in preemptive forum shopping when it decided to file a declaratory judgment action here rather than face this issue as a defendant in Bankruptcy Court. This Court has before noted that:

> . . . the use of the device of declaratory judgment to anticipate and soften the impact of an imminent suit elsewhere concerning long past dealings between the parties for the purpose of gaining an affirmative judgment in a favorable forum requires a closer look at the deference historically accorded a plaintiff's choice of forum.[89]

LBHI and SecurityNational had been involved in ADR proceedings prior to the filing of this suit. When those efforts failed, SecurityNational had a reasonable expectation that LBHI would file its adversary suit in Bankruptcy Court. Its knowledge of that Court's negative decisions on the very issues SecurityNational now presses here raises an inference of tactical, preemptive forum shopping.[90]

**Factor Seven: SecurityNational will not suffer prejudice if this action is dismissed.**

Finally, given the above, the Court concludes that SecurityNational will suffer no prejudice if this state action is dismissed. Dismissal here leaves the parties to pursue their action in Bankruptcy Court. In this particular circumstance,

---

[89] *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co.*, 2003 WL 25849476, at *2 (Del. Super. Ct. Jan. 24, 2003) (quoting *Air Prod. & Chemicals, Inc. v. Lummus Co.*, 252 A.2d 545, 547 (Del. Ch. 1968) *rev'd on other grounds*, 252 A.2d 543 (Del. 1969) (deciding *forum non conveniens* issue)).

[90] *See, e.g.*, *Saudi Basic*, 2003 WL 25849476, at *1 (finding forum shopping occurred where the party filed its Delaware action to avoid having a trier of fact in New Jersey hear about the charges); *See also Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964) (possible "jockeying" for position considered as factor in favor of granting motion to stay Delaware action).

the Bankruptcy Court provides rights and remedies equal to this Court. But given the peculiar history of this case, it is better-suited to resolve this specific claim.

## C. The Parties' Remaining Arguments

Because the Court dismisses this action on the grounds explicated, it need not reach the parties' other arguments, namely: whether SecurityNational's declaratory judgment action would violate the Bankruptcy Code's automatic stay statute; whether the "first-filed" doctrine warrants dismissal of this action; or whether this action should be dismissed under *forum non conveniens*.

But the Court notes its very healthy skepticism that SecurityNational would fare any better under any of those alternative arguments.

First, it seems quite likely that this declaratory judgment action does violate the automatic stay under § 362 (a)(3). At a minimum, the Indemnification Claims seem to qualify as estate property under the Bankruptcy Code, given the Code's broad definition of "estate property" to include "intangible or contingent interests."[91] These Indemnification Claims directly impact the distribution of the

---

[91] *See, e.g., Begier v. I.R.S.,* 496 U.S. 53, 58 (1990) (defining an interest of the debtor in property as "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings"); *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205-06 n. 9 (1983) (noting that the legislative history of Bankruptcy Code § 541(a)(1) demonstrates that the definition of "estate property" was intended to sweep broadly to include "all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property currently specified in section 70a of the Bankruptcy Act."); *In re Michener,* 342 B.R. 428, 430 (Bankr. D. Del. 2006) ("It is well-settled that section 541(a)(1) encompasses 'all legally recognizable interests,' even those that are "contingent and not subject

estate and were explicitly included in the Bankruptcy Plan. But, as the Bankruptcy Court is currently considering this very issue, this Court will not substitute its own judgment in that area.

Second, while Delaware has not decided whether the first-filed doctrine applies to a non-binding mediation, such as the one entered into by LBHI and SecurityNational, the Delaware Supreme Court has recently applied the doctrine to arbitration proceedings.[92] Our high Court explained that there simply is "no principled reason to distinguish an arbitration proceeding from other first-filed actions."[93] "[A]rbitrations are typically treated as 'prior actions' for other purposes."[94] And, the principles underlying the *McWane* doctrine – "the desire to avoid the 'wasteful duplication of time, effort, and expense that occurs when judges, lawyers, parties, and witnesses are simultaneously engaged in the adjudication of the same cause of action in two courts,' and 'the possibility of inconsistent and conflicting rulings and judgments" – apply equally to arbitration proceedings.[95] The Court might reasonably conclude that the same "underlying

---

[92] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246 (Del. 2015).

[93] *Id.* at 1252.

[94] *Id.*

[95] *Id.* (quoting *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970)).

to possession until some future time.") (quoting *In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir. 1984)).

policies" could support application of the first-filed doctrine to non-binding mediation. But given the lack of precedent and its resolution here on other grounds, the Court need not do so now.

Lastly, in evaluating whether to dismiss or stay an action on *forum non conveniens* grounds, the Court notes that the six *Cryo-Maid* factors[96] are practically coextensive with the *Burris* factors discussed above. So, as above, application of the *forum non conveniens* principals too would seem to weigh against this litigation in Delaware.

## V. CONCLUSION

Accordingly, for the reasons stated above, this action is not right for declaratory judgment by this Court and LBHI's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

---

[96] *See supra* III-D, n. 60.